RECEIVED
USDC, CLERK GREENVILLE, SC
2017 MAR 10 PM 1:36

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| J. Todd Kincannon, in his capacity as a qualified elector of the State of South Carolina domiciled in the part of the City of Simpsonville designated as Ward III,<br><br>       Plaintiff,<br><br>v.<br><br>The State of South Carolina,<br><br>       Defendant. | Civil Action No. _:__-CV-_____-__<br><br>**COMPLAINT** |

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff J. Todd Kincannon brings this action in his capacity as a qualified elector of the State of South Carolina domiciled in the part of the City of Simpsonville currently designated as Ward III by city ordinance. The City of Simpsonville's designation of Plaintiff's domicile as lying situate within Ward III has not changed at any time relevant to this matter and is unlikely to change at any point in the foreseeable future.

2. Plaintiff alleges that the current method by which the City of Simpsonville elects the six ward representative members of the Simpsonville City Council, including Plaintiff's representative from Ward III, denies Plaintiff federally protected rights under Fourteenth Amendment, specifically those relating to the "one man, one vote" principle arising out of the Equal Protection Clause and the right of electors to cast an unsuppressed, undiluted vote arising out of the substantive component of the Due Process Clause. U.S. Const. amend. XIV § 1.

3. This deprivation is the result of a bizarre municipal election method permitted to South Carolina municipalities by S.C. Code § 15-5-20(4). The ordinary mechanism for electing ward representatives to municipal councils is for the electors of the ward to

select their representative. S.C. Code § 15-5-20(4) provides that municipalities may permit "crossover voting" in ward representative elections. In municipalities that use this method, including the City of Simpsonville, voters from other wards are permitted to vote in the ward representative election of any particular ward if they choose to do so.

4.  S.C. Code § 15-5-20(4) creates the possibility that voters from other wards will "gang up" on a particular ward and hijack the ward representative election, preventing the electors of the ward from electing the ward representative of their choice and, instead, selecting a ward representative unwanted by the ward who will look out for the interests of the wards that elected him rather than the ward he is supposed to represent.

5.  This possibility has become a reality in Ward III of the City of Simpsonville. In the November 2015 municipal election, ward representatives were elected in Wards I, III, and V. A coalition of candidates and their supporters from Wards I and V, which are neighboring "twin" wards and natural allies, hijacked the ward representative election in Ward III and made no secret of doing so. This coalition expressly advocated for voters in Wards I and V to cast votes in the Ward III election for the ward representative candidate who had pledged to vote as a bloc with the coalition from Wards I and V. That candidate was elected, even though the electors of Ward III generally oppose the coalition from Wards I and V and, if allowed to select their own representative, would have chosen a different candidate.

6.  This has deprived Plaintiff and other electors in Ward III of their constitutional right to select their own ward representative without having their votes diluted and, in this case, entirely overwhelmed by voters from other wards and is certain to do so again in the future. Plaintiff seeks a declaratory judgment that ward crossover voting permitted

by S.C. Code § 5-15-20(4) is unconstitutional and injunctive relief to remedy the use of this unconstitutional method by the City of Simpsonville in prior municipal elections.

7. Defendant The State of South Carolina is a defendant with regard to Plaintiff's causes of action for declaratory and injunctive relief, which is proper because this action challenges the constitutionality of a state statute, S.C. Code § 15-5-20(4) and a related statute, S.C. Code § 15-5-20(5). An action of this nature is properly brought against the State of South Carolina to enable the South Carolina Attorney General to exercise his exclusive right and duty under South Carolina law to appear and represent the State of South Carolina in court in all matters in which the State is interested, and the constitutionality of a state statute is such a matter.

8. This Court may exercise personal jurisdiction over all persons and entities named as defendants in this action upon proper service of process.

9. Plaintiff seeks declaratory and injunctive relief relating to the question of whether S.C. Code § 5-15-20(4) violates the United States Constitution and does so in a way that deprives Plaintiff of federally protected rights specifically relating to the "one man, one vote" principle established by the Equal Protection Clause of the Fourteenth Amendment and the right of a qualified elector to be free from interference in voting either by suppression or dilution of his vote protected by the substantive component of the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. XIV § 1.

10. This Court has subject matter jurisdiction over cases and controversies of this nature pursuant to the provisions of 28 U.S.C. § 2201 (declaratory judgments), 28 U.S.C. § 2202 (equitable relief to enforce declaratory judgments), and 28 U.S.C. § 1331 (federal question jurisdiction), along with related provisions in 42 U.S.C. § 1983 (civil rights).

Therefore, this Court will have subject matter jurisdiction over this action provided it arises out of an actual case or controversy between the parties.

11.  There is an actual case or controversy in this matter because Plaintiff contends that the City of Simpsonville's method of electing ward representatives to Simpsonville City Council is unconstitutional, that this has injured the electors in Ward III during the most recent election by denying such electors their constitutional right to select a ward representative of their choice, that this injury is ongoing so long as the incumbent Ward III ward representative stays in office without an intervening election, and that this injury is likely to recur in the next election unless the municipal election method in question is declared unconstitutional and the City of Simpsonville is enjoined from using it.

12.  Plaintiff has standing to bring this action because Plaintiff is an elector domiciled in Ward III of the City of Simpsonville whose favored candidate for ward representative was the previous incumbent, who chose not to seek re-election only because the City of Simpsonville employs the municipal election method that Plaintiff contends is unconstitutional. Plaintiff contends that if the City of Simpsonville had not switched to this unconstitutional method, the previous incumbent would have sought re-election, would have won, and would be Plaintiff's ward representative at present. Instead, Plaintiff's ward representative is an individual whose views are diametrically opposite those of Plaintiff and the previous incumbent and who was elected only because voters from other wards were able to meddle in Ward III's ward representative election by virtue of the municipal election method Plaintiff challenges in this case.

13.  Plaintiff also has standing to bring this action because Plaintiff is attempting to recruit a candidate to challenge the incumbent and to raise funds and support for that

endeavor. Every candidate approached has stated that they would consider running and likely decide to run for Ward III representative if the only persons who could vote in the election were the electors of Ward III. One potential candidate, a candidate Plaintiff highly favors, has expressly promised to run if the method is changed to one that does not permit people in wards other than Ward III to vote for Ward III's representative. Plaintiff has received similar responses with requests for funds and other support. A number of individuals would be willing to commit resources to Plaintiff's preferred candidate in an election for Ward III representative if only Ward III electors could vote in the election. These individuals unanimously believe any such efforts would be futile so long as other wards, particularly Wards I and V, are able to vote in Ward III elections.

14.  In light of the foregoing, Plaintiff has standing to bring this case, which presents an actual controversy, and this Court has subject matter jurisdiction to hear and decide it.

15.  Venue is obviously proper in the District of South Carolina in actions against the State of South Carolina, South Carolina municipalities, and persons who hold public office in a South Carolina municipality involving attacks on the constitutionality of a South Carolina statute. The Greenville Division is appropriate because the facts of this case principally relate to events in the City of Simpsonville, South Carolina, a municipality situated entirely in Greenville County, a county that is obviously within the Greenville Division.

## ALLEGATIONS

16.  The substance of the controversy is adequately stated in the jurisdictional allegations. Subject to this, however, Plaintiff makes additional allegations as follows:

17.  At all times within living memory, the municipality of Simpsonville, South

Carolina, has been governed by a municipal council consisting of a popularly elected mayor, elected at-large, and six ward representatives, each elected to represent one of six distinct wards into which Simpsonville is partitioned.

18. The ward representatives were intended to be, and have always been regarded as, bona fide representatives of the wards they were elected to represent. The people of Simpsonville, layman and councilman alike, have always universally understood the relationship between ward representative and ward resident as identical in character to the relationship between a legislator and the people of that legislator's district. This is indisputable as a factual matter for a number of reasons.

19. Ward representatives have always been, and still are, required by ordinance to reside within their ward boundaries at all times during the term of office, a residency requirement that would be unconstitutional if such persons were not intended to act as representatives of their wards. Beyond the residency requirement, numerous ordinances, council minutes, communications, procedures (both formal and informal), and numerous other records going all the way back to Simpsonville's founding disclose an uncountable number of situations where the ward resident-ward representative relationship was regarded as a constituent-representative relationship.

20. These records demonstrate that this understanding was, and remains, truly universal among people who have formal interactions with the City of Simpsonville. However, this perception goes further, and is universal among residents of Simpsonville who do not regularly interact with the municipal government in formal ways that lead to the generation of written records suitable for archiving.

21. The idea that the citizens and officials of Simpsonville have always universally

regarded the ward resident-ward representative relationship as a constituent-representative relationship, de facto and de jure, is provable by mountains of testimonial and documentary evidence available from current and former residents, members of council, members of various boards and commissions (including Plaintiff), city employees, other government agencies and officials, and a number of other persons and entities. Such evidence is available from all manner of sources relating to all manner of interactions, whether formal or informal, sophisticated or unsophisticated, written or unwritten.

22.     Plaintiff lives in Ward III of the City of Simpsonville, a municipality that uses the S.C. Code § 15-5-20(4) method in city council elections. The City of Simpsonville has six wards and elects ward representatives to four year terms on an alternating two-year basis. The mayor and the ward representatives for Wards I, III, and V are elected the odd year immediately preceding a presidential election. The ward representatives for Wards II, IV, and VI are elected in the odd year immediately following a presidential election.

23.     Plaintiff and the other electors residing in Ward III make up about one-sixth of the electorate that selects Ward III's representative and ordinarily comprise between one-third and one-sixth of the voters who actually turn out in such elections. Even if Plaintiff and every other elector in Ward III votes *unanimously* for a candidate seeking election as Ward III's representative, that candidate is not guaranteed to win or even make a runoff.

24.     There are presently two rival political factions in the City of Simpsonville, distinguishable by their support for the newly elected mayor, the Hon. Janice Curtis. Electors in Wards I and V who vote in municipal elections are near-unanimous in their support for the pro-Curtis faction. Wards I and V are neighboring wards that are closely

allied, Curtis is from Ward V, and Curtis' husband was the previous Ward V ward representative. The other wards—II, III, IV, and VI—are anti-Curtis, but not rabidly so.

25.   The pro-Curtis Wards I and V and the anti-Curtis Ward III all elected ward representatives in November of 2015. Because the pro-Curtis candidates in Wards I and V were shoe-ins, their efforts in the election were primarily directed at convincing their supporters in Wards I and V to vote for the pro-Curtis Ward III candidate, a tactic available because Simpsonville uses the method of election in S.C. Code § 15-5-20(4), which permits this sort of crossover voting in ward representative elections.

26.   To drive voters in Wards I and V to vote for the pro-Curtis Ward III candidate, the pro-Curtis candidates, including Curtis herself, publicly announced that they were running as a joint ticket and ran a single campaign called "One Simpsonville." They pooled resources, shared expenses, and coordinated fundraising, expenditures, get-out-the-vote efforts, etc. This included express exhortations to their supporters, mostly concentrated in Wards I and V, to vote a "straight ticket" for the pro-Curtis bloc. The sole purpose of the strategy was to ensure that voters in the pro-Curtis Wards I and V overwhelmed voters in the anti-Curtis Ward III and elected the pro-Curtis Ward III candidate as the representative for Ward III, despite Ward III's anti-Curtis alignment.

27.   This was the only way the pro-Curtis faction could gain political control of City Council, because the ward representatives in Wards II, IV, and VI were all aligned with the anti-Curtis faction and were not up until November of 2017, when voters in the pro-Curtis strongholds of Wards I and V would be unlikely to turn out to vote because the 2017 ballot would not include an election in Ward I or Ward V, or an election for mayor.

28.   The twelve-year incumbent representative for Ward III in 2015, like most of her

constituents in Ward III, was aligned with the anti-Curtis faction. The simple math of two wards (I and V) versus one ward (III) made clear that any re-election effort would be futile, and she declined to run again. Another anti-Curtis candidate ran in her place but was defeated— unsurprisingly—by 66% to 34%, a margin that was *precisely* two-to-one. The pro-Curtis voters in Wards I and V were able to hijack the Ward III ward representative election only because the Simpsonville follows the bizarre procedure in S.C. Code § 15-5-20(4) for conducting municipal elections which allows crossover voting for ward representatives, allowing this hijacking to take place.

29.    S.C. Code § 15-5-20(4) violates "one man, one vote," and clearly so in this District in light of Vander Linden v. Hodges, 193 F.3d 268 (4th Cir. 1999), in which the Fourth Circuit struck down South Carolina's county legislative delegation voting rules because they permitted voters residing outside of a particular county to have a material, albeit indirect, influence in decisions made by that county's legislative delegation.

30.    If the indirect-but-material influence on a county delegation by non-residents of the county in Vander Linden v. Hodges violates the Equal Protection Clause, the direct-and-overwhelming influence on the selection of a city council ward representative by non-residents of the ward permitted by S.C. Code § 15-5-20(4) clearly does as well.

31.    Sections (1), (2), and (3) of S.C. Code § 15-5-20 vest municipalities with the authority to designate all, some, or none of their council members as at-large representatives elected at-large, and all, some, or none of their council members (other than the mayor) as ward representatives elected by ward. But section (4)'s creation of a third category—ward representatives elected at-large rather than by the wards they represent—is constitutionally intolerable because it invariably permits voters in other

wards to "gang up" on an opponent ward and elect as that ward's representative a person who is not favored, or is even unanimously despised, by the electorate of the ward.

32.     The problem is particularly acute in Ward III of the City of Simpsonville. Simpsonville staggers its council elections with three every two years. This invariably creates the possibility of a two-vs.-one scenario, and the two wards Ward III is matched up with, Wards I and V, are essentially twins.

33.     Wards I and V are neighboring wards created by bifurcation of a single homogenous area that makes up roughly one-third of the city, while Ward III is in a wholly different area of the city and is also different with respect to most factors that determine municipal political alignment. It matters of city politics, Wards I and V are natural allies, and Ward III is the natural adversary of both.

34.     None of the other wards face these problems. Wards I and V are allies and face no realistic possibility that Ward III, alone, will hijack their ward representative elections. Wards II, IV, and VI are no meaningful threat because their ward representative elections are held at a different time than those of Wards I, III, and V.

35.     Wards IV and VI are natural allies in much the same way Wards I and V are, which means Ward II poses no threat to either. Ward II could be threatened by Wards IV and VI but is not at present because all three are aligned with each other and with Ward III. Wards II and III are natural allies, but they can never leverage their position, either to protect themselves or to hijack another ward, due to staggering of the elections.

36.     All of this means that S.C. Code § 15-5-20(4) is plainly unconstitutional as applied to the City of Simpsonville's municipal elections, but it is also unconstitutional on its face. Whenever a public official is to be popularly elected to represent a particular

territory in a governmental assembly of some kind, the electors domiciled within the territory have the exclusive right to select their representative. No other electorate is constitutionally competent to elect the territory's representative.

37.  The Constitution does not require that all governmental assemblies consist of persons representing a particular territory, nor does it require that every public official who represents a particular territory in a governmental assembly be popularly elected.

38.  But when a public office exists that represents some particular territory in a governmental assembly, and the occupant of that public office is popularly elected, the Constitution mandates the conclusion that the only electorate suited to decide who should represent the territory in the governmental assembly is that territory's electorate.

39.  The Constitution gives the several States wide flexibility in designing state and local government, but permitting the electorate of one territory to select the representative of a different territory is a bridge too far. It does not matter whether the representative is a state legislator, a city councilor, or a dog catcher. The Constitution does not permit it.

40.  The problem cannot be cured by permitting the electorate of both territories to meddle in each other's elections. A statute permitting the citizens of California to vote in South Carolina's senate elections is patently unconstitutional, and it does not become "less" unconstitutional if it gives South Carolinians a reciprocal right to vote in California's senate elections. The substantive component of the Due Process Clause bars states from depriving any electors in a district of their right to vote by interfering with their efforts to vote or by diluting their votes by permitting persons from other districts to vote in their elections. An elector whose vote is cancelled out by an illegal vote has been deprived of the right to vote just as surely as if he'd been barred from voting ab initio.

41.   Therefore, Plaintiff also seeks a declaration that S.C. Code § 15-5-20(4) violates the substantive component of the Due Process Clause. U.S. Const. amend. XIV § 1.

## FOR A CAUSE OF ACTION
### DECLARATORY JUDGMENT

42.   In Vander Linden v. Hodges, 193 F.3d 268 (1999), the Fourth Circuit Court of Appeals struck down South Carolina's county legislative delegation voting rules, which permitted legislators to cast votes of equal weight in county delegation meetings, holding that such rules became unconstitutional when South Carolina created multi-county legislative districts to comply with Reynolds v. Sims, 377 U.S. 533 (1965).

43.   The legislative delegation voting rules made perfect sense before Reynolds v. Sims because every legislative district was wholly within a single county. But after Reynolds v. Sims, the rules gave rise to a number of bizarre and unfair scenarios.

44.   After Reynolds v. Sims, legislators with only a sliver of their districts in a certain county had equal voting power in delegation meetings as legislators whose districts were mostly or wholly within the county. This often led to situations where county legislative delegations were effectively controlled by legislators selected by the voters of neighboring counties.

45.   For example, suppose the legislative delegation for Marion County consisted of one House member whose district was 90% Marion and 10% Florence, two House members whose districts were 10% Marion and 90% Horry, and a Senator from Dillon who only ever attended his home county's delegation meetings, even though his district also encompassed all of Marion. In this hypothetical, the Marion County legislative delegation is controlled by legislators selected by the voters of Horry County. This sort of thing happened frequently before Vander Linden v. Hodges.

46. The Fourth Circuit rightly found that this system violated "one man, one vote" because it provided a clear opportunity for voters from other counties to dilute the votes of county residents in selecting the county legislative delegation. In fact, it often permitted voters and legislators from other counties to entirely hijack the process.

47. This case presents a situation like the one in <u>Vander Linden v. Hodges</u>, though it is substantially easier to spot the constitutional problems because situation is far less complicated than the scenario in <u>Vander Linden</u>.

48. Plaintiff accordingly seeks a declaratory judgment that that S.C. Code § 15-5-20(4) violates the substantive component of the Due Process Clause. U.S. Const. amend. XIV § 1 for all the reasons that the legislative delegation system struck down in <u>Vander Linden v. Hodges</u> was found to violate the same provisions of the United States Constitution.

### PRAYER FOR RELIEF

Wherefore, having fully pled, Plaintiff J. Todd Kincannon respectfully requests the Court grant the following relief:

    a.    A declaratory judgment that the municipal council election method in S.C. Code § 5-15-20(4), which permits crossover voting in ward representative elections, is unconstitutional on its face or, alternatively, as applied to Simpsonville municipal elections.

    b.    A declaratory judgment that the City of Simpsonville's decision to switch from the municipal council election method in S.C. Code § 5-15-20(2) to S.C. Code § 5-15-20(4) was unconstitutional, and therefore void, because S.C. Code § 5-15-20(4) is unconstitutional.

c. A declaratory judgment that the City of Simpsonville must conduct all future municipal council elections using the municipal council election method in S.C. Code § 5-15-20(2), which requires ward representatives to be selected by the electors in each ward with no crossover voting, unless and until the City of Simpsonville lawfully switches to a different method.

d. A declaratory judgment that the City of Simpsonville may not switch to the municipal council election method in S.C. Code § 5-15-20(5), which also permits crossover voting in ward representative elections, because it suffers from the same constitutional defects as S.C. Code § 5-15-20(4).

e. A declaratory judgment that any elections conducted pursuant to S.C. Code § 5-15-20(4) that resulted in the election of the incumbent ward representatives must be re-run using the municipal council election method in S.C. Code § 5-15-20(2) where there is any realistic possibility that the result of the election would have been different had it been conducted pursuant to S.C. Code § 5-15-20(2) and that new candidates must be given an opportunity to file because such candidates may have not filed the first time due to the election method.

f. Award such other relief as justice may require.

Respectfully submitted,

JAMES JOHN TODD KINCANNON
PLAINTIFF PRO SE
214 Jones Avenue
Simpsonville, SC 29681

March 6, 2017